# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PAUL MANIZAK,

     Petitioner,           CASE NO. 2:16-CV-10657
                                  HONORABLE DENISE PAGE HOOD
v.                        CHIEF UNITED STATES DISTRICT JUDGE

SHIRLEE A. HARRY,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Paul Manizak ("Petitioner"), currently on parole supervision with the Michigan Department of Corrections, while confined at the Wayne County Jail in Detroit, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges his convictions for receiving and concealing a stolen motor vehicle, M.C.L.A. § 750.535(7), driving with a suspended license second offense, M.C.L.A. § 257.904(3)(b), failing to stop at the scene of an accident, M.C.L.A. § 257.620, and being a fourth

---

[1] This Court obtained the information regarding petitioner's parole status from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of. *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004). It is not clear why petitioner is currently incarcerated at the Wayne County Jail.

felony habitual offender, M.C.L.A.§ 769.12.  For the reasons that follow, the

petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County

Circuit Court.  This Court recites verbatim the relevant facts relied upon by

the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1).  *See e.g. Wagner v. Smith,* 581

F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions and sentences arise out of a motor
> vehicle accident.  During the afternoon of October 11, 2011,
> Walter Claydon was stopped at an intersection in Canton waiting
> to make a left-hand turn.  While he was stopped, a 2010 Ford
> Fusion struck Claydon's truck from behind.  The parties stipulated
> that the Fusion was stolen one week earlier.
>
> After the impact, Claydon exited his vehicle to see if the other
> driver was injured.  Defendant exited the Fusion.  Claydon
> observed defendant from a distance of approximately four feet,
> with the two standing face-to-face.   After Claydon asked
> defendant if he was injured, defendant walked to the sidewalk and
> then ran down the sidewalk, heading north toward a clump of
> trees. Claydon witnessed defendant removing clothing as he ran.
> Claydon waited for police to arrive and provided a description of
> defendant to a responding officer.   According to Claydon,
> defendant was wearing black shorts with a white stripe and a
> yellow t-shirt.  A report of the accident was broadcast from police
> dispatch, which described defendant as a bald white male, age 30
> to 35, wearing a yellow t-shirt and black shorts with a white stripe.
>
> Officers Eric Kolke and Jessica Nuotilla canvassed the area north

of the accident scene. Nuotilla heard movement in a wooded area and asked Kolke to assist her search. Kolke observed a man exit the wooded area. This man was bald, shirtless, and wearing black shorts with a white stripe. Kolke described the man as sweating heavily and covered in scratches. Kolke ordered the man to the ground and handcuffed him. At trial, Kolke identified defendant as the man he apprehended.

Nuotilla arrived at the accident scene shortly thereafter and after searching defendant, Kolke and Nuotilla placed defendant in the rear seat of Nuotilla's police vehicle. At some point during this time, Nuotilla noticed a cell phone lying in the parking lot. Defendant alternately claimed and disclaimed ownership of the cell phone. In an effort to discover the cell phone's owner, Nuotilla used it to call 911, hoping that the operator would be able to identify the owner using caller ID. However, the 911 operator was unable to do so. The officers asked defendant his name and defendant responded by stating that his name was "Death."

*People v. Manizak*, No. 314541, 2014 WL 2218951, at *1 (Mich. Ct. App. May 27, 2014).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 497 Mich. 889, 854 N.W. 2d 885 (2014).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Manizak,* No. 12-001699-01-FH (Third Cir. Ct., Dec. 3, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. Manizak,* No. 325996 (Mich.Ct.App. June 22, 2015); *lv. Den.* 499 Mich. 856, 873 N.W.2d 306 (2016).

Petitioner seeks relief on the following grounds:

I. The state officials obtained the conviction by suppressing favorable evidence to petitioner regarding testimony known to be perjured by the state's key witness, and the testifying Canton Township Police Department, in violation of *Brady v. Maryland/Giglio v. United States,* and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

II. The state officials obtained the conviction by the denial of the guaranteed effective assistance of counsel at the trial and in general that was based on the State's interference with the petitioner's defense by the Wayne County Prosecutor's Office, by shopping for, and obtaining the services of defense counsel Brian Gagnuik for the express purpose of deliberately not subject[ing] the state's witnesses' perjured testimony, or all Fourth Amendment issues to any adversarial testing, that was designed to obstruct justice, and amounted to a fraud upon petitioner, sham proceedings, and breach of contract, that intentionally disregarded the United States Supreme Court rulings in *Strickland v. Washington/Hazel Atlas Glass Co. v. Hartford Empire Glass Co.,* and violated the Sixth and Fourteenth Amendments to the United States Constitution.

III. The state officials obtained the conviction by suppressing favorable knowledge that the preliminary case report upholding the petitioner's arrest warrant is forged/unconstitutional, that violated the United States Supreme Court's rulings in *Brady v. Maryland/Franks v. Delaware,* that offended the Fourteenth Amendment to the United States Constitution.

IV. The state officials obtained the conviction by presentation of testimony known to be perjured that was used as a means of depriving petitioner of his liberty through pretense of trial, that intentionally disregarded the United States Supreme Court's rulings in *Brady v. Maryland/Giglio v. United States* and *Mooney v. Holohan,* in violation of the Fourteenth Amendment to the United States Constitution.

V. The state officials obtained the conviction by prohibiting the

petitioner from engaging in appropriate cross-examination to demonstrate a prototypical form of bias on the part of the state's key witness Walter Claydon and the testifying Canton Township Police Department, to expose to the jury facts from which reasonable jurists could draw inferences relating to the reliability of the witnesses, that intentionally disregarded the United States Supreme Court's rulings in *Davis v. Alaska,* in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

VI. The state officials obtained the conviction by the intentional infliction of cruel and unusual punishment contrary to the Eighth, Eleventh, and Fourteenth Amendments of the United States Constitution, by intentionally running a sham, and convicting a factually and legally innocent man that amounted to a fundamental miscarriage of justice, where no reasonable juror would have found the petitioner guilty beyond a reasonable doubt in light of newly presented evidence that the state's sole/key witness, Walter Claydon, was a coconspirator and aided and abetted the Canton Township Police Department and the Wayne County Prosecutor's Office in the material suppression of the CTPD's forged warrant application upholding the petitioner's arrest warrant, and offered his false testimony to conceal evidence.

VII. The state officials obtained/solidified the conviction by the denial of effective assistance of counsel on direct review pursuant to counsel's negligence in a failure to investigate issues of merit, failure to challenge the ineffectiveness of trial counsel and material omissions from his appellant's brief of issues or arguable merit that rendered the appeal of right as fundamentally unfair and was contrary to the United States Supreme Court rulings in *Strickland v. Washington* and *Evitts v. Lucey* in violation of the Fourteenth Amendment to the United States Constitution.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

#### A. Claims # 1, 3, 4, 5, and 6. The *Brady/Giglio* and confrontation claims.

The Court discusses petitioner's first, third, fourth, fifth and sixth claims together for judicial clarity. Petitioner alleges in his first, third, fourth, and sixth claims that the prosecution suppressed exculpatory evidence and/or concealed evidence that their witnesses committed

perjury. In his fifth claim, petitioner alleges he was denied his right to confrontation. Petitioner's claims are somewhat incoherent, difficult to understand, and often interlap. Petitioner appears to be arguing that the prosecution withheld exculpatory evidence regarding petitioner's cell phone that was recovered when petitioner was arrested. Petitioner also claims that his rights under *Brady* were violated because the prosecutor withheld exculpatory evidence at the preliminary examination regarding a police report that the prosecutor attempted to use to refresh Mr. Claydon's memory. Petitioner also claims that the prosecutor withheld evidence that Mr. Claydon was testifying as a confidential informant. Petitioner claims that Mr. Claydon committed perjury by withholding this fact from the jury. Petitioner also argues that he was denied his right to confront Mr. Claydon about his informant status. Petitioner finally claims that the police committed perjury regarding the legality of the search and arrest in this case and that the prosecution withheld evidence that showed that the police testified falsely concerning the legality of the arrest.

To prevail on a claim that the prosecutor withheld exculpatory evidence, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to

punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002). A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also

9

a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  A habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).  Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner cannot bring any *Brady* or *Giglio* claims regarding the legality of his search or arrest because Fourth Amendment claims are non-cognizable on habeas review.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).

The Court is aware that petitioner's trial counsel did not file a motion to suppress the evidence and there was no ruling from the trial court with respect to petitioner's Fourth Amendment claims. Petitioner, did, however, raise his Fourth Amendment claims before both the Michigan Court of Appeals and the Michigan Supreme Court on direct appeal and raised several of these claims again in his post-conviction motion. These courts analyzed and rejected his claims.

The failure to conduct a hearing in the trial court on petitioner's various Fourth Amendment claims does not mean that petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims. *See Good v. Berghuis,* 729 F. 3d 636, 638-40 (6th Cir. 2013). The Sixth Circuit in *Good* noted that "[t]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639.

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. *See Rashad v. Lafler,* 675 F. 3d 564, 570 (6th

Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief); See also *Villafuerte v. Stewart,* 111 F. 3d 616, 627 (9th Cir. 1997)(petitioner's Fourth Amendment claims non-cognizable when he was able to raise them in a state post-conviction motion). Because all of the material facts were before the state courts on direct and collateral review, petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.

Petitioner's claim that the prosecutor withheld evidence regarding the legality of petitioner's arrest and search is itself barred by the *Stone v. Powell* doctrine because it essentially involves a Fourth Amendment

attack on the validity of petitioner's search and arrest. *See O'Quinn v. Estelle,* 574 F. 2d 1208, 1209-10 (5th Cir. 1978)(petitioner's claim that prosecution failed to disclose exculpatory information, which involves due process guaranty of a fair trial, was part of petitioner's Fourth Amendment claim, since exculpatory information would eventually be used to attack the search warrant)*; See also Simpson v. Kreiger,* 565 F.2d 390, 392 (6th Cir. 1977)(refusal to disclose informant's identity did not deny petitioner a full and fair opportunity to litigate Fourth Amendment claims in state court). Petitioner is not entitled to relief on this portion of his claim.

Petitioner contends that the prosecutor withheld exculpatory evidence because the prosecutor did not produce his cell phone at trial.

Petitioner is not entitled to relief on this claim because he failed to show that his cell phone contained exculpatory information. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him or to her. *Coe v. Bell*, 161 F. 3d at 344. Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a

14

due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th

Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191

F.3d 695 (6th Cir.1999).  Petitioner has failed to show that his cell phone

contained any exculpatory information.   Petitioner is therefore not entitled

to habeas relief on this *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

Petitioner further claims that the prosecutor withheld exculpatory

evidence at the preliminary examination because he failed to introduce a

police report into evidence.

Petitioner's argument is mistaken.  The prosecutor did not suppress

the police report.  Instead, the examining magistrate refused to allow him

to use the report to refresh Mr. Claydon's memory.  There is nothing from

the record to indicate that defense counsel was never provided a copy of

the police report.

In any event, there is no clearly established Supreme Court law

which requires that exculpatory evidence be provided to a defendant prior

to or at a preliminary examination.  The language from *Brady* and other

Supreme Court decisions indicates that the right to exculpatory evidence

is a trial right.  In *Brady*, the Supreme Court explained that "[a] prosecution

that withholds evidence on demand of an accused which, if made

15

available, would tend to exculpate him ... helps *shape a trial* that bears heavily on the defendant." *Brady*, 373 U.S. at 87–88 (emphasis added). Similarly, in *United States v. Agurs*, 427 U.S. 97, 103-04 (1976), the Supreme Court indicated that the rule that prohibits the use of perjured testimony, upon which the *Brady* rule was founded, is based on the idea that the use of perjured testimony represents "a corruption of the truth-seeking function of the *trial process.*" (emphasis added). Finally, in *United States v. Bagley*, 473 U.S. 667, 678 (1985), the Supreme Court ruled that "suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a *fair trial.*" (emphasis added). In the absence of any Supreme Court law that requires the disclosure of exculpatory evidence to a criminal defendant prior to the preliminary examination, the prosecutor's failure to provide a copy of the police report to petitioner before or at the preliminary examination would not entitle him to habeas relief, in the absence of any allegation that petitioner did not have the report at trial. *See e.g. Maglaya v. Buchkoe,* 515 F. 2d 265, 268-69 (6th Cir. 1975).

Petitioner's next claim is that the prosecution withheld evidence that Mr. Claydon was working as a confidential informant for them and that Mr.

16

Claydon committed perjury when he failed to reveal this fact at trial.

Petitioner has offered no evidence to show that Mr. Claydon was a confidential informant. Petitioner is not entitled to relief on any *Brady* claim because it is conclusory and unsupported. Petitioner's related perjury claim must be rejected for the same reason. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Petitioner is not entitled to relief on his related fifth claim involving his right to confront Mr. Claydon about his informant status because it too is unsupported. *See Shepherd v. Nelson,* 432 F. 2d 1045, 1046 (9th Cir. 1970)(District court properly dismissed state prisoner's claim on petition for federal writ of habeas corpus that he was deprived of rights of confrontation and cross-examination as the claim was a bare conclusion unsupported by allegations of underlying fact).

Petitioner finally claims that Mr. Claydon and perhaps the police officers testified falsely that Mr. Claydon gave a description of petitioner to the police. In support of this claim, petitioner points to Detective Kelley's testimony that he did not know who passed on to him the description of petitioner. This evidence does not establish that Mr. Claydon or the

responding officers testified falsely, only that Detective Kelley could not recall the person who communicated Mr. Claydon's description to the detective. Petitioner's claim is unsupported and conclusory. He is not entitled to relief on his claim.

**B.  Claim # 2.  The ineffective assistance of trial counsel claims.**

Petitioner next contends that he was denied the effective assistance of trial counsel.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner initially claims that his trial lawyer was forced on him by the State of Michigan. On May 9, 2012, petitioner requested that he be allowed to represent himself because he did not trust the lawyers who had been appointed to represent him. The judge permitted petitioner to represent himself. (Tr. 5-9-12, pp. 4-6). On May 17, 2012, the trial judge appointed petitioner's trial counsel, Brian Gagnuik, to act as advisory counsel while petitioner continued to act as his own attorney. (Tr. 5-17-12, pp. 3-5).

On May 29, 2012, petitioner came to court for trial, dressed in jail clothing. Petitioner refused to wear the civilian clothing offered to him by the trial court judge. (Tr. 5-29-12, pp. 3-4). The trial judge cautioned petitioner about the danger of self-representation. After further discussions, the judge determined that petitioner should be referred to the Center for Forensic Psychiatry for an evaluation on both competency and criminal responsibility. (*Id.*, pp. 4-11). On September 11, 2012, the judge indicated that petitioner had been found to be competent to stand trial after

being evaluated by the Forensic Center.  Petitioner still wished to represent himself. (Tr. 9-11-12, pp. 4-5).

On November 1, 2012, petitioner appeared for trial.  The trial judge asked petitioner if he intended to represent himself or whether he wished to have Mr. Gagnuik act as his attorney during his trial.  Petitioner informed the court that he decided to have Mr. Gagnuik serve as his attorney during his trial. (Tr. 11-1-12, pp. 3-5).  The trial was then adjourned until November 28, 2012 because the complainant's wife was hospitalized. (*Id.*, pp. 6-7).  Petitioner was permitted to argue an oral motion to have the judge recuse himself, which was denied. (*Id.*, pp. 7-10).

On November 28, 2012, the trial judge questioned petitioner again regarding his decision to represent himself during his trial.  Petitioner indicated that he would have Mr. Gagnuik act as his attorney at trial. (Tr. 11-28-12, pp. 8-10).

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975).  However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161.

Moreover, a defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *See also U.S. v. Martin,* 25 F. 3d 293, 295 (6th Cir. 1994)("To assert the right of self-representation, a defendant must do so unequivocally.").

A defendant waives his or her right to self-representation by acquiescing to be represented by counsel. *See United States v. Jackson*, 304 F. App'x. 424, 429 (6th Cir. 2008). By agreeing to be represented by Mr. Gagniak, petitioner waived his right to self-representation.

Petitioner next contends that his trial counsel was ineffective for failing to move to suppress the arrest warrant. To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *See also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United*

*States v. Crews*, 445 U.S. 463, 474 (1980)(citing *Gerstein v. Pugh*, 420

U.S. 103, 119 (1975)); See also *Frisbie v. Collins*, 342 U.S. 519 (1952);

*Ker v. Illinois*, 119 U.S. 436 (1886).  The Supreme Court held that "[T]he

'body' or identity of a defendant or respondent in a criminal or civil

proceeding is never itself suppressible as a fruit of an unlawful arrest,

even if it is conceded that an unlawful arrest, search, or interrogation

occurred.*" INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although

the exclusionary rule prohibits the introduction at trial of evidence that was

seized in violation of the constitution, a criminal defendant "is not himself a

suppressible 'fruit,' and the illegality of his detention cannot deprive the

Government of the opportunity to prove his guilt through the introduction of

evidence wholly untainted by the police misconduct." *United States v.*

*Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body

that was seized during this allegedly unlawful arrest.  The mere fact that

petitioner may have been arrested without probable cause would not

prevent him from being prosecuted and convicted of this offense.  Failing

to file a frivolous motion to dismiss does not constitute ineffective

assistance of counsel. *See Goldsby v. U.S.,* 152 F. App'x. 431, 438 (6th

Cir. 2005).  A challenge to the legality of petitioner's arrest would not have resulted in his release from custody.  Counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F.Supp. 2d 725, 738-39 (E.D. Mich. 2002).

Petitioner next contends that trial counsel was ineffective for pursuing a defense that petitioner did not know that the car he was driving in was stolen, rather than arguing that petitioner was not the driver.

The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles,* 556 U.S. at 123.  In light of the overwhelming evidence establishing that petitioner was the driver of the vehicle, defense counsel made a reasonable decision to instead raise a defense that petitioner was not guilty because he did not know that the car he was driving in was stolen.

Petitioner next contends that trial counsel was ineffective for failing to follow up on Detective Kelley's testimony that he did not know who provided him with Mr. Claydon's description of the perpetrator.  Although other attorneys might have reached a different conclusion about the value of cross-examining Detective Kelley in greater detail, counsel's strategic

choice not to further cross-examine Detective Kelley was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689). Counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable" because he made it after considering the relevant law and facts of the case. *Id.* Finally, petitioner has failed to identify how additional impeachment of Detective Kelley would have affected the verdict. Defense counsel did not perform ineffectively by not more forcefully cross-examining the detective, particularly when the effect of further probing was entirely speculative on petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012).

As a related claim, petitioner alleges that trial counsel should have objected to Detective Kelley's testimony on the ground that it was perjured. Petitioner failed to show that any of the witnesses committed perjury. Counsel was not ineffective for failing to challenge any of this testimony on the ground that it was perjured. *Brown v. Burt*, 65 F. App'x. 939, 942 (6th Cir. 2003).

Petitioner next contends that trial counsel was ineffective in the handling of the cell phone issue. The cell phone was never admitted into

evidence, nor is there is any indication that the cell phone contained any exculpatory evidence. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).

Petitioner argues that defense counsel should have rebutted the prosecutor's arguments about Mr. Claydon's statements. Defense counsel cross-examined Mr. Claydon and the other witnesses. Petitioner does not argue how defense counsel could have otherwise rebutted Mr. Claydon's statements. To the extent that petitioner argues that counsel should have cross-examined Mr. Claydon and the other witnesses about Mr. Claydon being a confidential informant, as discussed *infra*, petitioner offered no evidence that Mr. Claydon was an informant. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner also argues that defense counsel was ineffective for failing to object to the prosecutor's misconduct of fabricating evidence. This Court already determined that the prosecutor did not commit misconduct,

therefore, petitioner is unable to establish that he was prejudiced by counsel's failure to object. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to relief on his second claim.

### D. Claim # 7. The ineffective assistance of appellate counsel claim.

Petitioner contends that appellate counsel was ineffective for failing to raise his claims on his appeal of right. Petitioner raise many of these claims in his Standard 4 *pro per* supplemental brief.[2]

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental *pro per* brief; petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel. *See Donaldson v. Booker,* 505

---

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

F. App'x. 488, 496 (6th Cir. 2012); *Bentley v. Bock,* 239 F. Supp. 2d 686, 696-97 (E.D. Mich. 2002).

None of the claims raised by petitioner have any merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to relief on his final claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *Id.*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*

**S/Denise Page Hood**
**Denise Page Hood**
**Chief Judge, United States District Court**

**Dated:  August 3, 2017**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2017, by electronic and/or ordinary mail.**

**S/LaShawn R. Saulsberry**
**Case Manager**